*954 SCALES, J.,
dissenting.
I respectfully dissent. In my view, contrary to the majority’s conclusion,-" Singleton v. Greymar Associates[12] does not fundamentally alter, sub silentio, decades of Florida statute of limitations jurisprudence.
I. Overview
The statute of limitations for a foreclosure action is five years from when the last element constituting the cause of action occurs. § 95.11(2)(c), Fla. Stat. (2013).
When, as here, a mortgage secures a promissory note containing an optional acceleration clause, the statute of limitations begins to run from the date the lender exercises its acceleration right. Greene v. Bursey, 733 So.2d 1111, 1114-15 (Fla. 4th DCA 1999); Monte v. Tipton, 612 So.2d 714, 716 (Fla. 2d DCA 1993); see also Smith v. Fed. Deposit Ins. Corp., 61 F.3d 1552, 1561 (11th Cir.1995); Erwin v. Crandall, 129 Fla. 45, 175 So. 862, 863 (1937); Spencer v. EMC Mortg., 97 So.3d 257, 260 (Fla. 3d DCA 2012).
In this.case, after the borrower Harry Beauvais defaulted by failing to make the installment payment due on September 1, 2006, the lender (plaintiff Deutsche Bank’s predecessor-in-interest) exercised its option to accelerate all amounts due on January 22, 20Q7. Deutsche Bank’s instant foreclosure lawsuit was filed on December 18, 2012, well beyond the five-year statute of limitations.
Relying on almost eighty years of well-established Florida jurisprudence, the trial court granted the defendant’s motion for summary judgment on this issue, and a panel of this Court unanimously affirmed the trial court’s determination in that regard. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575, 2014 WL 7156961 (Fla. 3d DCA Dec. 17, 2014).
Relying on a sweepingly broad interpretation of Singleton v. Greymar Associates—a Florida Supreme Court case in which the term “statute of limitations” is not even mentioned — the en banc majority opinion reverses the summary judgment and, in the process:' (i) creates the legal fiction that a lender’s acceleration does not affect the installment nature of the note; (ii) rewrites the acceleration and reinstatement provisions of the parties’ note and mortgage; and (iii) effectively rewrites the statute of limitations for mortgage foreclosure actions in Florida.
Specifically, the majority opinion holds both- (a) that a borrower’s obligation to make, and a lender’s obligation to accept, monthly installment payments on an installment note continue after the lender’s acceleration; and (b) that irrespective of the nature of the dismissal, as a matter of law, any dismissal of a foreclosure lawsuit nullifies the lender’s prior acceleration and reinstates the installment nature of the previously accelerated note, as if the lender had never exercised acceleration.
In my view, not only are these two holdings inconsistent with each other, but, when taken together, these holdings effectively rewrite Florida statute of limitations jurisprudence in foreclosure cases. Singleton can, and should, be read in harmony with — father than to upend — significant Florida precedent regarding installment note acceleration, mortgage foreclosure, and limitations of actions.
II. Facts

A. The Promissory Note

On February 10, 2006, Beauvais borrowed $1,440,000 from plaintiffs predeces *955 sor-in-interest, American Broker’s Conduit. Beauvais’s loan was memorialized with a promissory note, requiring Beauvais to repay the loan by making monthly installment payments over thirty years.
The installment nature of the note (which obligates the borrower to repay the loan in prescribed monthly installments, and which obligates the lender to accept such payments) is plainly, .precisely, and expressly defined in paragraphs 3(A) and (B) of the note:
I will make a payment every month,.., I will make my monthly payment on the 1st day of each month beginning on April 1, 2006. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Princi-pal_ I will make my monthly payments at [address of lender].... My monthly payment will be in the amount of U.S. $10,050.00 for the first 120 months of this Note, and thereafter will be in the amount of' U.S, $12,382.96. The Note Holder will notify me prior to the date of change in monthly payment.
The note’s maturity date is expressly defined as March 1, 2036. Specifically, the note reads as follows: “If, on March 1, 2036,1 still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date.’ ”
In its paragraph 6(C), the note contains the following default/acceleration provision that, upon the borrower’s default, gives the lender an option to accelerate all amounts due under the note, thereby advancing the note’s maturity date:
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
Recognizing that the note is secured by a uniform' mortgage (that is, a security instrument)', paragraph 10 of the note contains the following language related to the default/acceleration provisions in the accompanying mortgage:
That Security Instrument, describes, how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
[[Image here]]
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given ... within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior'to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

B. The Mortgage

Beauvais’s note was secured by a mortgage, encumbering a unit in the Chatham at Aqua condominiums in Miami Beach.
Consistent with the above-cited default language in the note, paragraph 22 of Be-auvais’s mortgage contains the following acceleration/remedy provision:
Acceleration; Remedies. Lender shall give notice to Borrower prior to aeceler- *956 ation following Borrower’s breach of any covenant or agreement in this Security Instrument.... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30. days from the date the notice is given to Borrower, by which the default must be , cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by .judicial proceeding.
In paragraph 19 of the Beauvais mortgage, the parties painstakingly and precisely detail the conditions precedent in order for . the installment nature of the note to be reinstated after the lender has exercised its option to accelerate. Paragraph 19 reads as follows:
Borrower’s Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower’s right to reinstate; or (c) entry of judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender- all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys’ fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender’s interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender’s interest in the Property and rights under this Security Instrument, and Borrower’s obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer’s check or cashier’s check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured thereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.
In sum, the parties’ note and mortgage provide a contractual mechanism both: (i) for Beauvais to prevent the lender from exercising its right to acceleration after a default and the lender’s notice thereof; and (ii) for Beauvais to reinstate the installment nature of the note after the lender has- exercised its right to acceleration.
*957 Neither the note nor the mortgage contain any provision reinstating the installment nature of the note if, after acceleration, a lender foreclosure action is dismissed.

C. The First Lawsuit and its Disposition

After Beauvais failed to make the September 2006 installment payment due on his promissory note, American Home Mortgage, Inc. (“AHMS”), the successor to Beauvais’s initial lender, exercised its contractual right to accelerate the total amount due on the note.[13]
In its January 22, 2007. complaint, AHMS alleged that Beauvais then owed AHMS the sum of $1,439,976.80 in principal, plus interest accrued from August 1, 2006. The complaint identifies the default date as September 1, 2006, and names as defendants both Beauvais and the Chat-ham at Aqua Condominium Association.[14]
Almost four years after AHMS’s foreclosure lawsuit was filed, the trial court set the matter for a December 6, 2010 case management conference. The trial court’s order setting the case management conference required the attendance of all parties at the conference. AHMS failed to appear at the conference. As a result, the trial court dismissed the case without prejudice. The adjudicative portion of the trial court’s form order, dated December 6, 2010, reads, in its entirety, as follows: “The Plaintiff failed to appear without explanation. Therefore, this case is dismissed without prejudice.”
Nothing in the trial court’s order reinstates the installment nature of the loan or adjudicates AHMS’s acceleration as ineffective in any regard.
Nothing in the .record indicates that, upon entry of the, trial court’s December 6, 2010 dismissal, order, either AHMS or Be-auvais treated this order as: (i) reinstating the installment nature of the loan, (ii) nullifying AHMS’s prior acceleration, or (iii) readjusting the note’s maturity date from January 22, 2007 (the advanced maturity date after acceleration), to March 1, 2036 (the pre-acceleration maturity date expressed in the note). Moreover, it is undisputed that Beauvais never exercised, nor sought to exercise, the “reinstatement after acceleration” provision of paragraph 19 of the mortgage.

D. The Instant Lawsuit and its Disposition

On November 2, 2012, Homeward Residential, Inc., a. loan servicer working on behalf of AHMS’s successor,. Deutsche Bank, sent Beauvais a pre-acceleration default notice.
This notice stated that Beauvais defaulted on the note by failing to make the installment payment due on October 1, *958 2006 (as opposed to the September 1, 2006 default date alleged in AHMS’s acceleration), and that Beauvais owed Deutsche Bank the sum of $796,161.19, which the letter describes as “the sum of payments that have come due on or after the date of default 10/01/2006, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection.”
This notice also purports to give Beau-vais through December 7, 2012 (thirty-five days from the date of the notice), to make the $796,161.19 payment in order to avoid a second acceleration and foreclosure lawsuit.
Nothing in this November 2, 2012 letter references AHMS’s January 22, 2007 acceleration, any nullification of that acceleration, any reinstatement of the installment nature of the loan, or why Homeward Residential waited more than six years after the alleged October 1, 2006 default to send this notice.
On December 18, 2012, Deutsche Bank filed the instant verified complaint for foreclosure. In its complaint, Deutsche Bank purports to exercise its option to accelerate a second time, alleging an October 1, 2006 default date (as opposed to the September 1, 2006 default date identified in the first complaint). • The verified complaint alleges an accelerated' amount then owed to plaintiff of $1,439,976.80 (the exact same accelerated amount alleged in AHMS’s initial foreclosure complaint, filed almost six years earlier).
Deutsche Bank’s complaint contains no allegations suggesting that AHMS’s initial acceleration was, in any way, ineffective. In fact,. Deutsche Bank’s complaint contains no allegations whatsoever regarding the January 2007 acceleration, any reinstatement of the installment nature of note occurring after that January 2007 acceleration, or why the complaint is being filed more than six years beyond the date of 'the alleged October 1, 2006 default.
By the time Deutsche Bank filed its December 18, 2012 complaint, Beauvais’s master condominium association, Aqua Master Association, Inc. (“Aqua”), had already foreclosed its previously recorded assessment lien, and had become the title owner of the condominium unit. Aqua filed an answer to Deutsche Bank’s complaint, asserting,, as its sole affirmative defense, that the five-year statute of limitations, prescribed in section 95.11(2)(c) of the Florida Statutes, barred Deutsche Bank’s cause of action.
. .Specifically, Aqua asserted that more than five years had elapsed between AHMS’s 2007 acceleration of the amounts due under Beauvais’s note and the filing of Deutsche Bank’s December 2012 purported re-acceíeration and foreclosure lawsuit.
, In December of 2013, Aqua filed a motion for summary judgment, seeking a declaration that the note and mortgage, .were unenforceable due to the expiration of the statute of limitations. The trial court granted Aqua’s summary judgment motion and entéred final summary judgment for Aqua. This appeal followed.
This Court’s panel opinion affirmed that portion of the trial court’s, summary judgment declaring that the expiration of the statute of limitations barred the plaintiffs foreclosure action, but reversed the trial court’s declaration cancelling the mortgage. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575, 2014 WL 7156961 (Fla. 3d DCA Dec. 17, 2014). This Court granted en banc review, and the en banc majority opinion reverses the trial court’s summary judgment. My dissent is explained below.
III. Analysis

■ A. Synopsis of Majority Opinion’s Holding and My Dissent

The majority opinion concludes that the five-year statute of limitations for foreclo *959 sure actions does not bar Deutsche Bank’s December 20, 2012 lawsuit, “[b]ecause the installment nature of the loan at issue did not terminate following acceleration and foreclosure and because dismissal of the foreclosure action returned the parties to the status quo existing, before acceleration.’. ..” See majority opinion at 947.
The majority opines that Singleton— which is a res judicata case and not- a statute of limitations case — stands for the proposition that a lender’s exercising its option to accelerate does not affect the installment nature of a loan. In other words, in the majority’s view, Singleton necessarily holds that, subsequent to a lender’s acceleration, a borrower’s monthly installment payments continue to become due monthly, and a borrower’s failure to make those post-acceleration monthly payments constitute subsequent defaults. See majority opinion at 6,12.
In a separate part of its opinion, the majority also (and, in my view, inconsistently) holds that, under Singleton, any dismissal of a prior foreclosure action automatically, and as a matter of law, places the parties into their pre-acceleration positions (i.e., the status quo) and allows the lender to treat the note as if the lender had never accelerated the note. See majority opinion at 13,19, 30.[15]
In my view, despite the majority’s abundant number of citations to Singleton v. Greymar Associates, the majority’s conclusions simply are not supported, much less required, by Singleton. The majority’s conclusions are contrary to the express terms of the parties’ note and mortgage, as well as the considerable body of Florida law that has governed this State’s mortgage transactions for decades.
Specifically, the majority’s principal conclusions are untenable because they: (i) contradict the express language of Singleton that only an adjudication that denies acceleration and foreclosure reinstates the loan (Singleton, 882 So.2d at 1007); (ii) effectively rewrite the parties’ contract documents, both by adding a new reinstatement provision and by redefining acceleration; ,(iii) rewrite Florida dismissal law, visiting upon a form dismissal order unprecedented adjudicatory effect; (iv) effectively rewrite the statute of limitations defense in foreclosure cases; and (v) conflate Florida’s statute of limitations with Florida’s, statute of repose in foreclosure cases.

B. Singleton v. Greymar Associates

(i) Summary of Singleton

In Singleton, the lender brought its first foreclosure action against the borrower based on a September 1, 1999 default. Singleton, 882 So.2d at 1005. The trial court dismissed that first foreclosure action, with prejudice, as a sanction for the failure of the lender to appear at a case management conference. Id.
The lender brought its second foreclosure action based on an-April 1, 2000 default. The trial court rejected the borrower’s res judicata defense (that -the adjudication of the first foreclosure lawsuit forever barred the lender from suing on the note and mortgage), and entered summary judgment for the lender. Id.
The borrower appealed, arguing that the trial court’s dismissal, with prejudice, of the lender’s first case constituted res judi-cata of any subsequent foreclosure case, *960 and forever precluded the lender from suing the borrower on the note and mortgage.
' On appeal, the Fourth District Court of Appeal affirmed the trial court’s summary-judgment, Singleton v. Greymar Assocs., 840 So.2d 356 (Fla. 4th DCA 2003), and the Florida Supreme Court upheld the district court’s affirmance.[16], [17] The Supreme Court determined that res judicata does not necessarily bar a subsequent action based on a subsequent default. Singleton, 882 So.2d at 1005.
The Supreme Court in Singleton held that the trial court’s adjudication of the first action “merely bars a second action relitigating the same alleged default.” Id. at 1007. The Court held: “While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a-separate and distinct issue.” Id.
Critical to understanding Singleton’s precedential value to the instant case — and how the majority opinion misinterprets same — is the following language from Singleton whereby the Court provides an illustration of when res judicata would not bar a second foreclosure case based on a subsequent default:
For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, an adjudication denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven.
Id. (emphasis added)[18]
In other words, if the lender is unsuccessful in its foreclosure action — resulting in an adjudication denying acceleration and foreclosure — the parties are placed back into their same contractual relationship (that is, the installment nature of the loan is reinstated) and the doctrine of res judicata will not preclude a lender lawsuit based on a subsequent borrower nonpayment default.[19]

*961
(ii) The majority’s construction of Singleton impermissibly reunites the parties’ contracts

The majority reads Singleton for the proposition that, despite a lender’s acceleration, a borrower’s obligation to pay — and a lender’s obligation to accept — monthly post-acceleration installment payments continues; that is, there can be multiple, post-acceleration non-payment defaults, and multiple, post-acceleration accelerations, on the same note.
Consequently, under the majority’s holding, when a borrower fails to make one of these post-acceleration monthly installment payments, a subsequent default has occurred, entitling the lender to accelerate again based on this subsequent default.
Yet, nowhere does Singleton say this; and, most certainly, nowhere do the parties’ contract documents say this.

(a) Installment nature of loan terminates upon lender acceleration

The plain language of the Beauvais promissory note and mortgage establishes that, once the borrower defaults on a monthly payment and the lender accelerates, the borrower is obligated to pay immediately all sums due under the note.
The loan’s installment nature is clearly and unequivocally spelled out in paragraph 3 of Beauvais’s note (captioned “PAYMENTS”), requiring Beauvais to make monthly payments to retire his $1,440,000 indebtedness.
Paragraph 6 of the note (captioned, “BORROWER’S FAILURE TO PAY AS REQUIRED”) expressly provides that if Beauvais defaults by failing to pay a monthly installment payment; and does not pay the “overdue amount by a certain date,” then “the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.” (emphasis added)
Paragraph 22 of the mortgage securing the note (captioned, “Acceleration; Remedies.”) contains virtually identical acceleration language: “If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.” (emphasis added)
Similarly, Paragraph 10 of the note (captioned “UNIFORM SECURED NOTE”), describing the acceleration provisions of the mortgage securing the note (the Security Instrument) reads, in relevant part, as follows: “That Security Instrument describes how and under what conditions I may be required to make immediate payment in full, of all amounts I owe under this Note.” (emphasis added)
*962 . As these documents clearly and unequivocally provide, once the lender exercises its option to require the borrower to pay immediately all amounts due under the note, the installment nature of the note terminates.
This construction of the parties’ contract documents is expressly reinforced in the mortgage’s reinstatement provision (paragraph 19 of the mortgage captioned, “Borrower’s Right to Reinstate After Acceleration.”). This post-acceleration provision requires the lender to reinstate the installment nature of the note — “as if no acceleration had occurred” — upon the defaulting borrower paying to the lender specifically defined “reinstatement sums and expenses,” so long as such payment occurs prior to the entry of any foreclosure judgment.[20]
Obviously, this reinstatement provision would be unnecessary and meaningless if, as the.majority concludes, Singleton requires the installment nature of the note to continue after a lender accelerates. If, under Singleton, monthly installment payments continue to become due áfter acceleration, what is being “reinstated?”
Singleton should.not be read in such a way as to render this reinstatement provision meaningless. See Bethany Trace Owners’ Ass’n, Inc. v. Whispering Lakes I, LLC, 155 So.3d 1188, 1191 (Fla. 2d DCA 2014) (“When interpreting contractual provisions, courts ‘will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.’ ”) (citation omitted).
Plainly, per the parties’ contract documents, after acceleration the borrower no longer enjoys the contractual right to repay the loan in monthly installments because the lender has exercised its contractual right to require the borrower immediately to repay the entire loan.

(b) Majority creates post-acceleration fiction and “new” reinstatement provision'

The majority’s court-imposed fiction that, after acceleration, subsequent monthly installment payments somehow continue to become due is not only contrary to the parties’ contract documents, it is simply fanciful.[21] A borrower’s monthly install *963 ment payment obligations and a lender’s acceleration after default do not, and cannot, coexist.[22]
The majority opinion rewrites the parties’ note and mortgage to create a reinstatement provision — i.e., reinstating the installment nature of the note, as if acceleration never occurred, upon any dismissal of any lawsuit — that the parties did not include when drafting their documents. Singleton does hot say this; the parties’ contract documents certainly do not say this; and Florida law is repugnant to the majority’s insertion of a provision into the parties’ private contract that the parties themselves most assuredly omitted.[23]

(iii) The majority’s construction of Singleton jettisons Singleton’s express presupposition that an adjudication denying acceleration is required for any “subsequent and separate alleged default” to exist

In order for an adjudication to place the parties “back in the same contractual relá-tionship with the same continuing obligations,” so that subsequent non-payment defaults would exist, Singleton insists upon “an adjudication denying acceleration and foreclosure.” ,[24]
Yet, according to the majority opinion, after any dismissal of a foreclosure action, the parties are returned to their pre-accel-eration positions. See majority opinion at 16. Then, unburdened by Florida’s statute of limitations, the lender is free to: (i) treat its prior acceleration as a nullity, (ii) pick another month, as the “new” default date,[25] and (hi) bring a new foreclosure action at any time -seeking the identical sums sought in the dismissed lawsuit.
Again though, Singleton does not say this. Explicit in Singleton is that, in order to reinstate the parties’ previous contractual relationship so that subsequent defaults may occur, the trial court’s adjudication of the first foreclosure action must deny the lender’s acceleration. Singleton, 882 So.2d at 1007. Otherwise, without such an adjudication denying acceleration, the lender’s affirmative, contractually prescribed acceleration remains'unaffected.
The majority’s overbroad construction of Singleton not only undermines this crucial aspect of Singleton, but also, as more particularly described in section III.C.(i), below, visits unprecedented adjudicatory effect upon a form dismissal order.

*964
C. The Majority Opinion Subverts Dismissal Law and Statute of Limitations Jurisprudence in Foreclosure Cases

As I describe in the three subsections below, the majority’s interpretation of Singleton fundamentally alters, in a foreclosure setting, both Florida dismissal law and statute of limitations jurisprudence in profound, and certainly unintended, ways.

(i) The majority opinion visits upon a form dismissal order an a'rray of inferred adjudications

The trial court’s December 6, 2010 case management conference dismissal order— a form order — states: “The Plaintiff failed to appear without explanation. Therefore, this case is dismissed without prejudice.”
According to the majority, this simple form dismissal order, by operation of law, and without a scintilla of record support evidencing any such intention by the trial court: (i) nullified the lender’s January 22, 2007 acceleration;[26] (ii) reinstated the installment nature of the loan; (iii) placed the parties back into their pre-acceleration positions, allowing Beauvais to make, and requiring Deutsche Bank to accept, monthly installment payments; and (iv) reset the note’s maturity date to March. 1, 2036.
Yet the trial court’s form dismissal order adjudicated nothing. It simply dismissed the plaintiffs action, requiring the plaintiff to file a new lawsuit if the plaintiff wished to proceed with the action.
Indeed, the dismissal was. without prejudice-so it would not have had res judicata effect even if Deutsche Bank’s second foreclosure lawsuit were to have alleged the exact same breach. Markow v. Am. Bay Colony, Inc., 478 So.2d 413 (Fla. 3d DCA 1986). It certainly was not an “adjudication denying acceleration and foreclosure” so as to place the parties back into their prior contractual provisions, as expressly contemplated by Singleton.
To Alústrate the significant problem with the majority’s conclusion in this regard, assume the following scenario: after the trial court announces the dismissal of the lender’s foreclosure case for failure to attend the trial, the borrower’s counsel requests the trial court to enter an ex parte order nullifying the lender’s prior acceleration and reinstating the installment nature of the borrower’s loan.'
The trial court reviews the mortgage’s detailed reinstatement provision (paragraph 19), and asks the borrower’s counsel whether the borrower has cured all defaults and paid the lender all expenses, as is expressly required for a borrower to reinstate a loan. The borrower’s counsel responds that the borrower has paid nothing to the lender in years and still owes tens, if not hundreds, of thousands of dollars to the lender.
Armed with .this information, the trial court then grants the borrower’s motion, nullifies acceleration and reinstates the installment nature-of the loan. ■ Clearly, no trial judge would ever enter such an order and, in the unlikely event such an order were entered, presumably it would be dead on arrival in any appellate court.
Yet the majority opinion’s conclusion that the trial court’s form dismissal order nullified the prior acceleration and reinstated Beauvais’s loan does precisely what no trial judge would ever do, In my view, this conclusion turns procedural fairness *965 on its head by giving the sanctioned party (the lender) the after-the-fact benefit of reinstatement: a remedy that the prevailing party (the borrower) never would receive.
In my view, the majority traverses a dangerously slippery slope. .We should be reluctant to hold that a trial court’s form dismissal order visits upon the borrower and lender a host of critical, yet unarticu-lated, adjudications that fundamentally change the parties’ contractual relationship and are entirely unsupported by the existing law or by the record below.

(ii) The majority opinion effectively rewrites the statute of limitations in foreclosure cases ■

The majority opinion states: “under Singleton, dismissal of a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action accelerating payment on a later default if the subsequent default' occurred within five years of the subsequent action and acceleration.” See majority opinion at 29 (paragraph 2). The majority supports this notion with citation to several, recent cases. See majority opinion at 12-13.
These cases implicitly hold what no Florida court, and certainly not the Singleton court, has ever explicitly held before: that payment default and not acceleration constitute the last element of a foreclosure cause of action. Despite the majority’s characterization otherwise, ’this -holding marks an upheaval of well-established Florida law.
In a foreclosure case such as this one, where the lender has exercised its contractual right to accelerate, the last element of the cause of action — triggering the running of the five-year statute., of limitations — is the lender’s affirmative act of acceleration, not the borrower’s missed payment. Monte v. Tipton, 612 So.2d at 716 (declaring that the statute of limitations begins to run upon notice of acceleration, while noting that-the initial payment default occurred more than fifteen years prior to the notice of acceleration);, see also Penagos v. Capital Bank, 766 So.2d 1089 (Fla. Bd DCA 2000).[27]
Recognizing that the lender’s notice of acceleration, and not the borrower’s payment default, triggers the statute of limitations, the note and mortgage in this case expressly reflect that the lender’s forbearance in exercising its right to accelerate does not constitute a waiver of its right to accelerate later.[28] Requiring lender acceleration and the filing of the lender’s foreclosure action to occur within five years of a default eviscerates these express -contract provisions.[29]
*966 Finally, the majority states: “We ... conclude that dismissal oí a foreclosure action accelerating payment on one default does not bar a subsequent foreclosure action on a later default if the subsequent default occurred within five years of the subsequent action.”' See'majority opinion at 12. Yet the majority fails to explain how its conclusion would require reversal in this case. In this case, the lender’s subsequent action was brought on December 18, 2012, which alleged that the subsequent default had occurred on October 1, 2006. Even assuming that both the majority’s rewrite of the statute of limitations and the parties’ contract correctly express the state of the law (which,'in my view, it does not), plainly Deutsche Bank’s subsequent action was not brought within five years of the alleged subsequent default.

(Hi) The majority opinion conflates the statute of repose mth'the statute of limitations

The practical effect of the majority’s opinion is to conflate the statute of repose for foreclosure ■ actions (section 95.281 of the Florida Statutes) with the statute of limitations for foreclosure actions.[30]
Under the majority’s opinion, the only time a statute ,of limitations defense conceivably could be effective is when a lender tries to bring a foreclosure action more than five years after the maturity date expressed on the face of the note and mortgage. Yet, this is precisely what the legislature has already done by enacting section 95.281(l)(a), the statute of repose for foreclosure actions.
This provision reads, in relevant part, as follows: “(1) The lien of a mortgage ... shall terminate ... 5 years after the date of maturity.” § 95.281(l)(a), Fla. Stat. (2013).
If it had been the intent of the legislature to render acceleration meaningless, so that the statute of limitations and the statute of repose for foreclosure actions were identical, the statute of repose would have been unnecessary. In other words, by allowing the lender’s acceleration and potential re-accelerations to keep delaying the operation of the statute of limitations, the majority establishes the note’s, maturity date as the only date that can trigger application of the five-year statute of limitations. The statute of limitations, and the statute of repose,, absurdly, would shake hands on March 1,2041.
IV. Singleton Distinguished and Harmonized

A. Singleton’s Equitable Considerations Are Irrelevant to this Court’s Statute of Limitations Inquiry

Because Singleton is a res judicata case and not a statute of limitations case, equitable principles expressly underpin Single *967 ton’s holding. Id. at 1007-08.[31] In fact, it was upon this very foundation that the Florida Supreme Court rested its decision in Singleton:
We must also remember that foreclosure is an equitable remedy and there may be some tension between a court’s authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine gf res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. , See deCancino v. E. Airlines, Inc., 283 So.2d 97, 98 (Fla.1973) (“[T]he doctrine [of res judicata] will not be invoked where it will work an injustice .... ”).
Singleton, 882 So.2d at 1008 (alteration in original).
By contrast, statutes of limitations are “fixed limitations on actions ... predicated on public policy and are a product of modern legislative, rather than judicial processes.” Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001).
Equitable considerations, while relevant to-the Supreme Court’s res judicata analysis in Singleton, are entirely irrelevant to cases (such as this) involving the application. of a statute of limitations.[32] .Proper application of a statute of limitations may by its very nature mean a plaintiff is barred from maintaining a suit that is otherwise meritorious. Nevertheless, the statute of limitations is the province of the legislative branch, and .this Court’s equitable powers (which may be exercised appropriately in the res judicata context) have no place in a statute of limitations analysis. As the Florida Supreme Court held more than eighty years ago:
Statutes should, when reasonably possible, be so construed as not to conflict with the Constitution or with long and well settled legal principles, but the language of this statute, considering it as a whole, cannot be given its apparent meaning and purpose without upsetting to some extent the principle of res judi-cata, and thus creating a somewhat anomalous situation, which will in some cases require a circuit judge to grant to a party a judgment at law on a cause of action, which, sitting as chancellor in a court of equity, he had already held such party was not, in equity and good conscience, entitled to enforce:
Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 573-74 (1931); see also Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla.1952) (holding that courts must presume that the legislature, in establishing a statute of limitations, “thoroughly considered and purposely preempted the field of exceptions to, and possible reasons for tolling, the statute. We cannot write *968 into the law any other exception, nor can we create by judicial fíat a reason or reasons, for tolling the statute since the legislature dealt with such topic and -thereby foreclosed judicial enlargement thereof.”).
Yet it seems that equitable considerations — rather than any explicit pronouncement in Singleton — fuel the majority opinion’s sweeping construction of Singleton to the detriment of well-established precedent.
Regrettably, the lure of equity diverts the majority from a proper distinguishing of Singleton, and causes the majority effectively to overrule cases that Singleton does not mention, much less disrupt. Examples abpund.

B. What Singleton Does Not Do

Singleton does not overrule Conner v. Coggins, 349 So.2d 780 (Fla. 1st DCA 1977), Locke v. State Farm Fire & Casualty Co., 509 So.2d 1375 (Fla. 1st DCA 1987), or Monte v. Tipton, 612 So.2d 714 (Fla. 2d DCA 1993). Singleton does not stand for the proposition that a lender’s acceleration is irrelevant to the calculation of the statute of limitations.
Singleton does not overrule Erwin v. Crandall, 129 Fla. 45, 175 So. 862 (1937), Casino Espanol de la Habana, Inc. v. Bussel, 566 So.2d 1313, 1314 (Fla. 3d DCA 1990), or Greene v. Bursey, 733 So.2d 1111, 1114-15 (Fla. 4th DCA 1999) (holding that entire debt becomes due, and loan’s maturity date is advanced, when the creditor takes affirmative action to alert the debtor that creditor has exercised option to accelerate). Singleton does not stand for the proposition that a lender’s acceleration does not advance the note’s maturity date.
Singleton does not overrule Baader v. Walker, 153 So.2d 51 (Fla. 2nd DCA 1963), or Cook v. Merrifield, 335 So.2d 297 (Fla. 1st DCA 1976). Singleton does not stand for the proposition that, despite a lender’s acceleration, a mortgagor’s obligation to pay — and a mortgagee’s corresponding obligation to accept — monthly installment payments continue.
Yet, relying on Singleton, the majority opinion makes each of these significant, unsupported leaps, as if Singleton, sub si-lentio, overturned decades of jurisprudence.[33]

C. Harmonizing Singleton; Employing an Inquiry Consistent with Precedent

In my view, it is incumbent upon the district courts to apply Florida Supreme Court precedent in such a way as not to produce a wholesale upheaval of well-established law. A far more restrained reading of Singleton — in harmony, and not at odds, with Florida case law regarding lender acceleration and the statute of limitations — is more compatible with a district court’s place in Florida’s court hierarchy.
Thus, consistent with Singleton and decades of Florida statute of limitations case law, I suggest that the following inquiry be employed -when, as in the instant case, both the first foreclosure action’s dismissal order and the parties’ contract documents are silent as to whether the dismissal has effected reinstatement: the court must consider relevant and highly probative, contemporaneous and post-dismissal factors to determine whether the prior case’s adjudication actually reinstated the installment nature of the loan. Such factors include: (i) whether the lender’s internal records treated the loan as being reinstated; (ii) how the lender characterized the loan for reporting purposes to any regu *969 lator; (iii) if, when, and how the lender communicated reinstatement to the borrower; (iv) how the lender treated any post-dismissal installment payments tendered by the borrower; and (v) the nature of any other post-dismissal communications between the lender and borrower.[34]
In the instant case, the record is devoid of any evidence indicating that, at any time contemporaneous with the December 6, 2010 dismissal, either party treated the trial court’s form dismissal order as a reinstatement of the installment nature of the loan.[35] In sum, after the dismissal of the first case in 2010, the parties did not reinstate the installment nature of the loan; the contract documents did not reinstate the installment nature of the loan; and the trial court did not reinstate the installment nature of the loan. Why should we?
V. Conclusion
I am not unmindful of the moral imperative driving both the majority’s opinion and a host of other State appellate court and federal decisions: borrowers should pay their mortgage obligations. The expiration of a statute of limitations, however, generally results in a windfall for the escaping defendant. In my view, neither the moral imperative that borrowers pay their obligations, nor Singleton, has abrogated decades of Florida jurisprudence governing the statute of limitations in foreclosure cases. I would affirm that part of the trial court’s final judgment holding that the statute of limitations precludes Deutsche Bank’s foreclosure action.
SHEPHERD, SALTER and EMAS, JJ., concur.

. 882 So.2d 1004 (Fla.2004)

. The lender’s acceleration is memorialized in its January 22, 2007 foreclosure lawsuit. Paragraph 4 of AHMS’s complaint reads as follows: "Defendant, HARRY BEAUVAIS, failed to pay the payment due on the Note on September 1, 2006, and Plaintiff elected to accelerate payment of the balance.” Similarly, paragraph 14 of the complaint reads as follows: "Plaintiff declares the full amount payable under the Note and Mortgage to be due.”
The record is unclear as to whether AHMS exercised its right to accelerate prior to the filing of its complaint. Even if AHMS had accelerated Beauvais's note earlier, such a fact would have no relevance as to whether the statute of limitations had run by the time Deutsche Bank filed the instant action, more than five years after the first action was filed.

. Subsequent to the recordation of the mortgage, Beauvais’s master condominium association placed an inferior lien on Beauvais’s condominium unit for unpaid condominium assessments. AHMS sought to foreclose this inferior lien.

. The majority's two principal conclusions are not only erroneous, they are also irreconcilable with each other. If acceleration does not terminate the installment nature of the loan, then dismissal is irrelevant because, acceleration has not altered the parties' status quo in the first place.

. The statute of limitations defense was not discussed in either the district court's or the Supreme Court’s Singleton opinion. In fact, based on the dates of the opinions, it is apparent that, in Singleton, both the first and the second lawsuits were brought well within five years of the September 1, 1999 default.

. The Florida Supreme Court’s jurisdiction arose from a conflict between the Fourth District Court of Appeal’s decision in Singleton and a Second District Court of Appeal decision, Stadler v. Cherry Hill Developers, 150 So.2d 468 (Fla. 2d DCA 1963). Stadler is also not a statute of limitations case. In fact, in Stadler the court concluded that res judicata barred the mortgagee’s second lawsuit, filed a mere thirteen months after the filing of the first lawsuit which was dismissed with prejudice by the trial court.

. In the Court’s illustration, the lender’s subsequent lawsuit is filed “a year later.” Surely, had the Singleton Court intended to upend statute of limitations foreclosure law — as does the majority's interpretation of Singleton — the Court could have employed a hypothetical implicating the five-year statute of limitations.

. This holding makes perfect sense in the context of res judicata law. If, for example, a lender sues a borrower, accelerates, and alleges that a particular payment was not paid, and the borrower is able to establish that the payment was made, the res judicata effect of that adjudication for the borrower would bar the lender from again suing on that alleged *961 missed payment. Because that adjudication denied the lender’s acceleration and foreclosure (and placed the parties back into their contractual relationship), the res judicata doctrine would not preclude the lender from suing the borrower for a later missed payment (a subsequent and separate default).
Alternately, if, for example, the borrower successfully defends a foreclosure action asserting he never signed the note or mortgage, or never received the loan proceeds (that is, the parties never had a contractual relationship), the res judicata effect of that adjudication — which obviously would not place the parties back into any contractual relationship — would'likely forever preclude the lender from again suing that borrower on that note.
While, in both of these examples, the mortgagor prevailed in the litigation, the resulting adjudications’ effect on the parties’ relationship is vastly different. By simply- concluding that all dismissals reinstate the installment ■nature of the loan, the majority significantly distorts Singleton and discounts the dramatic variances ‘that can result from different dismissal orders.

. The mortgage’s reinstatement provision requires a borrower to exercise his post-acceleration reinstatement right prior to the entry, of a foreclosure judgment To the extent that the majority opinion somehow views acceleration as occurring only upon entry of a foreclosure judgment for the lender, such an interpretation would render this paragraph’s timing provisions meaningless. Indeed, if acceleration occurs only upon judgment, and the borrower must exercise his reinstatement right after acceleration, but before entry of the judgment, the borrower’s reinstatement right would be illusory.

. The majority’s conclusion is also irrecon cilable with decades of case law holding that a loan acceleration — whether automatic or exercised at the option of the lender — causes the entire indebtedness immediately to become due. Baader v. Walker, 153 So.2d 51, 54 (Fla. 2d DCA 1963) (holding that lender's agent authorized to collect full amount of indebtedness after borrower’s default on installment payment because note contained automatic acceleration provision); Cook v. Merrifield, 335 So.2d 297 (Fla. 1st DCA 1976) (holding that in the absence of acceleration option, entire indebtedness became due upon borrower default as a product of automatic acceleration provision); cf. Home Credit Co. v. E.B. Brown, 148 So.2d 257, 260 (Fla.1962) (finding note to be usurious because lender had option to accelerate full amount of note plus interest; computation under usury law based on lender’s contractual right to accelerate even if lender chooses not to exercise full acceleration right). Nothing in this line of cases remotely suggests that, after acceleration, monthly installment payments continue to become due giving rise to successive accelerations. To tell a borrower that he owes everything immediately, and also- owes next *963 month’s installment payment, makes little sense.

.Oddly, the majority opinion cites to the non-waiver provisions of the note (paragraph 6) and mortgage (paragraph 12) as somehow supporting the notion that the installment nature of the note survives acceleration. See majority opinion at 15-17. These provisions say just the opposite: if the mortgagee accepts payments after acceleration, such acceptance shall not constitute a waiver of the mortgagee's rights.
The typical lender's practice is to refuse to accept a borrower’s monthly installment payments after the lender has exercised acceleration. If, as the majority concludes, deceleration does not transform the installment nature of the note and advance the note’s maturity date to the date of acceleration, not only would this non-waiver provision be entirely unnecessary, but a lender’s refusal to accept post-acceleration installment payments could constitute a lender breach.

. Brooks v. Green, 993 So.2d 58, 61 (Fla. 1st DCA 2008) (holding that a court is without authority to rewrite a clear and unambiguous contract between parties).

. Singleton, 882 So.2d at 1007.

. According to the majority opinion, the "new” default date alleged in the second lawsuit must be within five years of the filing of the second lawsuit.

. The majority’s implicit, entirely court-created conclusion that the trial court’s form dismissal order affects — much less nullifies— AHMS's acceleration is nothing short of remarkable. At no time in the case below, or on appeal, has any party challenged the effectiveness of AHMS’s January 22, 2007 acceleration of Beauvais’s note.

. Presumably, if the lender’s action sought only recoupment of missed payments, rather than the accelerated amount of the loan, then the borrower’s default would constitute the last element of the cause of action. In this case, however, as a practical matter, lenders exercise their right to accelerate immediately prior to, or contemporaneously with, their foreclosure action. In such a case, the date of the borrower’s default is irrelevant to the statute of limitations inquiry.

. Paragraph 6(D) of the note reads, in its entirety, as follows: "No Waiver By Note Holder ... Even if, at a time when I am in default, the Note Holder does not require me to pay immediately -in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.” Similarly, paragraph 1,2 of the mortgage reads, in relevant part, as follows: "Any forbearance by Lender in exercising any right or remedy ... shall not be a waiver of or preclude the exercise of any right or remedy.”

.It appears that the majority might have confused a lender’s forbearance of a contractual right with a lender’s exercise of a contractual right. See majority opinion at 29 (paragraph 1). In this case, the lender did not forbear (or waive) the exercise of its contractual right to accelerate; the lender affir *966 matively exercised its contractual right to' accelerate on January 22, 2007.

. A cause of action accrues, and the statute *of limitations'begins to run, when the last element of .the cause of action occurs. § 95.031(1), Fla. Stat. (2014). A statute of repose operates to set a time limit on a cause of action when the last element of the cause of action occurs beyond the repose statute’s outside date. Am. Bankers Life Assurance Co. of Fla. v. 2275 West Corp., 905 So.2d 189 (Fla. 3d DCA 2005). In a foreclosure action, the statute of limitations precludes an action to collect’ the debt if the action is brought more than five years from lender acceleration; while the statute of repose "establishes an ultimate date when the lien of. the mortgage terminates and is no longer enforceable.” Houck Corp. v. New River, Ltd., Pasco, 900 So.2d 601 (Fla. 2d DCA 2005). In this case, because the maturity date is evident from the face of the mortgage (March 1, 2036), section 95.281(1)(a) sets this "ultimate” date as March 1, 2041,

. Aeacus Real Estate Ltd. P’ship v. 5th Ave. Real Estate Dev., Inc., 948 So.2d 834, 836 (Fla. 4th DCA 2007) (observing that res judi-cata is an equitable doctrine). Res judicata is a judicially-created principle, rooted in equity, and "will not be invoked where it would defeat the ends of justice.” State v. McBride, 848 So.2d 287, 291 (Fla.2003).

. In fact, section 95.05 l(l)(f) of the Florida Statutes expressly provides that only "[t]he payment of any part of the principal or interest of any obligation or liability founded on a written instrument” tolls the five-year statute of limitations. Section ,95.051(2) limits statute of limitations tolling to the reasons specified in section ,95.051(1)(a)-(i). HCA Health Servs. of Fla., Inc. v. Hillman, 906 So.2d 1094, 1100-01 (Fla. 2d DCA 2004) (providing that the legislature’s enactment of section 95.051 establishes exclusive list ¡of conditions that can toll a statute of limitations, effectively eliminating the concept of "equitable tolling”). The majority’s sweeping interpretation of Singleton — holding that a borrower’s installment payments continue after acceleration — disregards section 95.0Sl(l)(f) altogether.

. Puryear v. State, 810 So.2d 901, 905 (Fla.2002) ("We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio.”).

. I recognize that the inquiry I suggest here is more nuanced than the inquiry suggested by the panel opinion with which I concurred. The panel opinion suggested a more formulaic approach to determining whether dismissal of the prior action reinstated the installment nature of the loan, i.e., a dismissal without prejudice does not reinstate the loan, while a dismissal with prejudice does reinstate the loan. Deutsche Bank Trust Co. Americas v. Beauvais, No. 3D14-575, 2014 WL 7156961 (Fla. 3d DCA Dec. 17, 2014). This reflected a thoughtful attempt to distinguish Singleton’s equity-based res judicata analysis and to avoid an extension of Singleton to the case at bar; however, I am left with little choice but to expound fully upon the inapplicability of Singleton in this context.

. My approach is hardly novel. In order to avoid summary judgment on á statute of limitations defense, New York's appellate courts — certainly not outliers in the mortgage foreclosure arena — require an affirmative revocation of a lender acceleration prior to the expiration of the statute of limitations. See e.g. EMC Mortg. Corp. v. Patella, 279 A.D.2d 604, 720 N.Y.S.2d 161 (2001).